UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 7: 10-17-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MARSHALL DEWAYNE WILLIAMS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter was transferred to the undersigned on this date. With the case came several motions filed by the Defendant, including a motion for recusal of all judges in the Eastern District of Kentucky as well as a tag-along motion to transfer trial to the Court's Central Division at Lexington. [Record No. 14] Having reviewed this pleading, the Court will deny the motion to recuse but will grant partial relief regarding the motion to transfer venue.

**I.**

At the outset, the Court notes that judicial disqualification is mandated under 28 U.S.C. § 455(a) "in any proceeding in which [the Court's] impartiality might reasonably be questioned." Section 455(b)(1) further requires disqualification "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." The standard for judicial disqualification is set forth in *Liteky v. United States*, 510 U.S. 540, 555 (1994):

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

The Sixth Circuit has adopted the *Liteky* standard in judicial disqualification cases. *See, e.g.*, *Lyell v. Renico*, 470 F.3d 1177, 1186-87 (6th Cir. 2006).

The undersigned is also mindful that the Sixth Circuit has cautioned that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (alteration in original) (citation omitted). In short, unnecessary recusals waste judicial resources. *City of Cleveland v. Krupansky*, 619 F.2d 576 (6th Cir. 1980). Likewise, granting groundless disqualification motions also encourages judge-shopping. Against this backdrop, the Court examines the Defendant's motion to disqualify.

**II.**

On July 1, 2010, a federal grand jury returned an indictment charging that Defendant Marshall Dewayne Williams did "forcibly assault, resist, oppose, impede, intimidate, and interfere with a U.S. Secret Service Special Agent, while the Special Agent was engaged in his official duties, all in violation of 18 U.S.C. § 111." [Record No. 1; Indictment, Count 1] In Count 2, the grand jury charged that Defendant Williams possessed a prohibited object while an inmate at the U.S. Penitentiary Big Sandy, an institution located in the Eastern District of Kentucky.[1] It is alleged that the prohibited object (a "shank") was possessed in violation of 18 U.S.C. § 1791(a)(2) and (b)(3). Trial of these two counts is currently scheduled to begin on September 13, 2010. [*See* Record No. 11; Scheduling Order.]

The Defendant's motion to recuse does not relate to the actions of any judge in this District concerning the underlying charges. Instead, his motion appears to be based on certain threatening letters sent to several courthouses and/or judges in the Eastern District of Kentucky around the same time as the conduct which gives rise to the current indictment. In support of his motion, Williams' attorney references an Order entered by Chief District Judge Jennifer B. Coffman on December 14, 2009, in a civil action filed by Williams against the warden of the U.S. Penitentiary Big Sandy, styled: *Williams v. Zuercher*, U.S. Dist.Ct., E.D. Ky., Southern Div., at Pikeville, Civ. No. 7: 09-127-SJM. In that civil action, Williams initial pleading seeks

---

[1] Defendant Williams is currently serving a ninety-nine years sentence following his conviction in the Northern District of Texas for one count of the malicious destruction of property used in interstate commerce, resulting in death, one count of possession of an unregistered firearm, and one count of making a firearm without regulatory approval. Therefore, if convicted of the two charges in the present case, Williams' total term of incarceration will not be lengthened for any practical purposes.

release from incarceration based, in part, on arguments that members of the executive and judicial branches of government are engaged in a conspiracy to unlawfully detain and torture him. He asserts that this torture includes being subjected to:

> unlawful beatings, physical and mental abuse, torture in the form of sensory deprivation and overload, hypothermia cold torture, sleep deprivation, ambulatory restraints, four-point "Rack" torture for multiple consecutive days and finally being handcuffed behind his back, choked, and assaulted by having a broken broom stick jammed repeatedly into his buttocks and rectum until he had to be taken to the hospital.

[*See* Record No. 2 in Pikeville Civil No. 7: 09-127-SJM, captioned "Petition for Emergency Writ of Habeas Corpus Ad Subjiciendum".]

According to Williams, this torture was inflicted upon him after he attempted to gain attention by mailing "<u>one single hoax anthrax letter.</u>" Williams states that, rather than attempting to resolve the situation and enforce the law, "some Executive Branch officials entered into a conspiracy with one FBI officer and two federal district judges in Memphis, Tennessee, deciding to violate both [his] and the public's constitutional rights." *Id*. He then claims that:

> Because of pervasive and outlandish unlawful behavior, and in order to get attention to save himself and others, and to protect the public at large, petitioner mailed <u>Six additional hoax anthrax letters</u> and prayed for a miracle! Unfortunately, the justice was not forthcoming. Petitioner's hoax letters were simply swept under the table and dismissed by the Executive Branch's corrupt <u>Assistant United States Attorney Mr. Henry.</u> . . . Petitioner caused to be mailed <u>16 more hoax anthrax letters, 3 hoax bomb letters, and 2 hoax smallpox letters</u>. The Executive Branch simply refuses to indict petitioner, enforce the law, or protect the citizens['] constitutional rights in any way!

*Id*.

On December 11, 2009, United States District Judge Amul R. Thapar recused himself from further participation in Williams' civil action. [*Id*.; Record No. 8] And on December 14,

2009, Chief Judge Coffman entered an Order referring the matter to the Chief Judge of the United States Court of Appeals for the Sixth Circuit for reassignment to a district judge outside the Eastern District of Kentucky. The matter was subsequently assigned to United States District Judge Stephen J. Murphy of the Eastern District of Michigan. [*Id.*; Record No. 11] On February 1, 2010, Judge Murphy summarily denied the relief requested by Williams. Judge Murphy's order and corresponding judgment are currently the subject of an appeal pending before the Sixth Circuit.

Although Williams' civil action is currently pending before the Sixth Circuit, he continues to mail materials to the clerk's office in this district. The record of his civil action reveals that his most recent submission includes a letter to the Clerk of the Court in which he attaches his "latest press release" for filing. Williams' cover letter to the Clerk of the Court states that he is very tired of mailing anthrax, time-bomb, small-pox and nuclear waste dust hoax letters to U.S. congressmen, federal judges, state governors (Mr. Beshear), the F.B.I., the I.R.S., the A.C.L.U., Homeland Security offices, etc., "and not being arrested for [his] efforts!" The attached "Press Release" then outlines the mailing of Williams' letters to various departments, agencies, and individuals.

### III.

Defendant Williams asserts that all judges in the Eastern District of Kentucky should recuse from his criminal action and the matter should be assigned for trial to a judge from another district. However, the undersigned does not find this motion to be well-taken. While it is correct that the Order entered by the Chief Judge on December 14, 2009, recused all district

judges in the Eastern District of Kentucky from further participation in that *civil* proceeding, it did not relate to any other civil or criminal matters, past or future. Likewise, Defendant Williams' criminal action appears to be limited to two charges that do not require resolution of whether Williams actually sent the subject letters to any individual or court. The first charge pertains to an alleged assault on a secret service agent while the second relates to the alleged possession of a shank while Williams was a prisoner at U. S. Penitentiary Big Sandy. Again, it bears repeating that Williams is not charged in this criminal proceeding with sending threatening letters to federal or state offices or officials. Further, the undersigned does not have any personal knowledge concerning any evidentiary matters which might be raised in this proceeding. Therefore, the only arguable grounds for the relief sought by Defendant Williams would be subsection (a) of 28 U.S.C. § 455 which provides that recusal is required where the judge's impartiality might be *reasonably* questioned. Under the circumstances presented here, the Court finds that a reasonable person would not question the undersigned in retaining the criminal action for trial. *See United States v. Nelson*, 922 F.2d 311, 319 (6th Cir. 1990) (adopting a reasonable person standard in evaluating recusal under § 455(a)).

Many courts have recognized that, while threats or attempts to intimidate judicial officers are often alleged as a basis for recusal, they ordinarily do not warrant such relief. *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (enumerating a number of factors that do not warranting recusal, including "threats or other attempts to intimidate the judge"); *FDIC v. Sweeney*, 136 F.3d 216, 219-20 (1st Cir. 1998) (upholding judge's refusal to recuse from case following personal, verbal attacks by litigant). As the First Circuit noted in *Sweeney*, "[a] party cannot

force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against [her]." *Id*. at 219. In fact, as the Third Circuit has held, a party's attempt to create recusal by affirmative actions counsels *against* recusal, "less we encourage tactics designed to force recusal." *United States v. Bertoli*, 40 F.3d 1384, 1414 (3rd Cir. 1994). Where, such as here, a party seeking recusal of a judge or group of judges and bases his motion on his own letters, such is "probative of the [Defendant's] dislike for [the judges], not the other way around." *See DeNardo v. Municipality of Anchorage*, 974 F.2d 1200, 1201 (9th Cir. 1992) (upholding judge's refusal to recuse where plaintiff sent letter to Senate Judiciary Committee opposing the judge's nomination to the bench). And as the Seventh Circuit has held, "it is improper for a lawyer or litigant . . . to *create* the ground on which he seek the recusal of a judge assigned to his case. That is arrogant judge-shopping." *Sullivan v. Conway*, 157 F.3d 1092, 1096 (7th Cir. 1998). *Accord United States v. Owens* 902 F.2d 1154, 1156 (4th Cir. 1990) ("Parties cannot be allowed to create the basis for recusal by their own deliberate actions. To hold otherwise would encourage inappropriate 'judge shopping.'").

In the present case, Williams seeks to obtain a recusal of all judges in this district based on what he claims was a hoax or series of hoaxes. That is, the mailing of one or more letters allegedly containing deadly substances. In his later filings in his civil action, Williams asserted that these letters were simply a ruse to gain public attention. Further, there is no indication that the letters actually contained deadly or hazardous substances. In light of the Defendant's statements following the mailing of the subject letters, the Court concludes that at least one

purpose was to seek the subsequent recusal of judges within this district.[2]  Again, the Tenth Circuit has provided some guidance in similar circumstances.

> [i]f a judge concludes that recusal is at least one of the defendant's objectives (whether or not the threat is taken seriously), then section 455 will not mandate recusal because the statute is not intended to be used as a forum shopping statute. . . . Similarly, if a defendant were to make multiple threats to successive judges or even to multiple judges on the same court, there might be some reason to believe that the threats were intended as a recusal device.

*United States v. Greenspan*, 26 F.3d 1001, 1006 (10th Cir. 1994).

In summary, the Court concludes that recusal is not required by any federal judge in this district in Williams' criminal trial.  The issues that are presented in this criminal matter involve whether, on or about August 20, 2009, Williams assaulted a Secret Service Agent or otherwise engaged in conduct in violation of 18 U.S.C. § 111 and whether, on or about that same date, he possessed a prohibited object while an inmate at a U.S. Penitentiary Big Sandy.  While the fact that Williams allegedly sent "hoax letters" during this same time period might become an issue during his criminal trial, the presentation of such proof would not alter the Court's conclusion regarding recusal.  Further, the undersigned has concluded that recusal is neither mandated nor appropriate under 28 U.S.C. § 455(a) because Williams may not use these letters – apparently sent of his own volition – to judge shop.  And the Court finds that his present motion is an attempt to do just that.

---

[2] If taken at his word, one could easily conclude that Williams' primary purpose in mailing the "hoax letters" was to gain attention while creating disruption at government offices and inconvenience for federal and state officials.  However, having initially failed in this endeavor, it appears that he now seeks to use the letters to obtain blanket recusals from all judges in this district and, therefore, indirectly succeed in attaining at least a portion of his original goal.  However, much to the Defendant's chagrin, trial of this matter is expected to be relatively brief.  And it will not provide a forum for the general complaints that Williams wishes to express about his prison term or the conditions of his confinement.

While the undersigned will not recuse from this matter for the reasons stated herein, the trial of the criminal matter will be transferred to the United States Courthouse located in Frankfort, Kentucky. In making this determination, the Court has considered all factors outlined in Rule 18 of the Federal Rules of Criminal Procedure, including the convenience of the potential witnesses who are likely to be federal agents, prison officials, and possibly other inmates. Transfer of the matter for trial in Frankfort, Kentucky, would appear to be only slightly inconvenient to these individuals. The greatest inconvenience will be to the United States Marshal's Service. However, that is not a factor to be considered under Rule 18.

Likewise, the prompt administration of justice would be furthered by such a transfer to the undersigned's duty station. In light of limited courtroom space in Lexington – and the number of judges presiding over matters at that courthouse – moving the trial of this matter to that location would create substantial inconvenience for the Court as a whole.

Finally, the Court does not find that the Defendant will be inconvenienced by the transfer to a courthouse less than thirty miles from the location he seeks and one which is also within the same division (*i.e.*, Central Division) of the Court. Although one of Williams' "hoax letters" was mailed to this location, individuals who were inconvenienced by the Defendant's actions will not be included in the jury panel to try the unrelated issues presented in the indictment.

**IV.**

For the reasons discussed above, it is hereby

**ORDERED** that the Defendant's motion for recusal [Record No. 14] is **DENIED**. However, the Defendant's motion to transfer this matter to a different venue for trial [Record No.

14] is **GRANTED**, in part. Trial of this matter is transferred to the Central Division of this Court, at Frankfort, Kentucky.

This 5th day of August, 2010.

Signed By:
*Danny C. Reeves* DCR
United States District Judge